| | |
|---|---|
| OMAR AWAD,<br> *Plaintiff*,<br><br>v.<br><br>UNIVERSITY OF CONNECTICUT<br>HEALTH CENTER, *et al.*,<br> *Defendants*. | No. 3:18-cv-01578 (JAM) |

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Omar Awad is a prisoner in the custody of the Connecticut Department of Correction at Garner Correctional Institution ("Garner") in Newtown, Connecticut. Proceeding *pro se* and *in forma pauperis*, on September 18, 2018, he filed a civil complaint under 42 U.S.C. § 1983 against 27 listed individuals and state agencies, and nearly 200 unidentified "John Doe" defendants for violating his Eighth Amendment right against cruel and unusual punishment. Doc. #1. The 27 listed defendants are the University of Connecticut Health Center Correctional Managed Health Care ("CMHC"), the Director of CMHC, "UConn Hospital," the Director of "UConn Hospital", Department of Correction ("DOC") Commissioner Scott Semple, the DOC, Manson Youth Institution ("MYI"), MYI Warden John Alves, MYI Deputy Warden Danielle Borges, MYI Deputy Warden Thomas Hunt, MYI Lieutenant David Wojcik, MYI Lieutenant DeJackome, MYI Correctional Officer Achu, MYI Correctional Officer Brian Larson, MYI Correctional Officer Karlson, MYI Correctional Officer Carnemolla, MYI Correctional Officer Rivera, MYI Doctor Gerald Velletta, University of Connecticut Doctor Freston, the Director of the MYI Medical Unit at MYI, Carl Robinson Correctional Institution ("Carl Robinson"), a doctor at Carl Robinson, the Medical Director at Carl Robinson, Cheshire Correctional

Institution ("Cheshire"), Cheshire Doctor Ricardo Ruiz, the Medical Director at Cheshire, and inmate Alberto Flores.

Awad has also filed motions for the appointment of counsel, Doc. #3, requesting a preliminary injunction, Doc. #4, and to amend his *in forma pauperis* application, Doc. #9. For the following reasons, I will dismiss Awad's complaint in part without prejudice, reserve decision on the preliminary injunction pending responses from certain defendants, deny the motion for appointment of counsel without prejudice, and deny the motion to amend the *in forma pauperis* application as moot.

## BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for purposes of this initial ruling. On March 3, 2016, at approximately 4:30 p.m., Awad was sitting and eating dinner in Block A Wing of H Cottage at MYI when inmate Flores assaulted him. Doc. #1 at 10 (¶ 1). Flores approached Awad from his right side and hit him, causing him to fall out of his seat and onto the floor. *Ibid.* (¶ 2). Awad suffered injuries to his head and neck, including a fracture to his nose, and lost consciousness for a short period of time. *Id.* at 10–11 (¶¶ 3–4).

As Awad regained his consciousness, Officer Achu dragged Awad across the room while face down on the floor and pressed his knee onto Awad's back, causing him pain and shortness of breath. *Id.* at 11 (¶¶ 5–7). Achu, who weighed twice as much as Awad, put all his weight on Awad's back, even though Awad was not resisting. *Ibid.* (¶¶ 8, 10). Awad asked Achu to ease the pressure he was applying to his back because he could not breathe, but Achu laughed and

said, "If you can talk, you can breath[e]." *Ibid.* (¶ 9). Meanwhile, Awad's nose continued to bleed from the assault by Flores. *Ibid.* (¶ 10).

As Achu held Awad down, Officer Karlson applied handcuffs to Awad's wrists. *Id.* at 12 (¶ 12). Lieutenant Wojcik, Officer Rivera, and Officer Carnemolla also responded to the scene. *Ibid.* (¶ 13). Awad told Wojcik and the other officers that he was too dizzy to stand up and walk and requested a wheelchair, but after ten to fifteen minutes of lying on the floor bleeding from his nose, the officers forced him to stand up and walk to the medical unit at MYI. *Id.* at 12–13 (¶¶ 14–18, 22–25).

While in the medical unit, Awad spoke with a doctor who informed him that lying face down on the floor while bleeding from his nose placed him at a greater risk of developing permanent damage to his nose. *Id.* at 13 (¶ 20). Nurse Valentukonis recorded Awad's injuries and referred him to the University of Connecticut Health Center ("UConn") for further evaluation. *Id.* at 13–14 (¶¶ 25–26).

At 6:00 p.m., Awad was sent to the emergency room at UConn. *Id.* at 14 (¶ 27). He was experiencing blurry vision, nausea, neck and back pain, dizziness, anxiety, pain in his face, and other ailments. *Ibid.* (¶¶ 28–29). The emergency room physician confirmed that Awad's nose was broken and that he had tissue swelling and a deviated septum. *Ibid.* (¶ 30). The physicians prescribed Awad medication. *Ibid.* The physicians informed Awad that his nose was too swollen for them to set it back in place. *Id.* at 15 (¶ 33). They instructed him to schedule a follow-up appointment with an Ear, Nose, and Throat ("ENT") specialist to return within six to ten days. *Ibid.* They informed Awad that MYI officials would be aware of this instruction. *Ibid.*

Nurses at UConn also instructed Awad to apply ice to his injury for 20 to 30 minutes every two to three hours over the next several days. *Id.* at 14 (¶ 31). They also instructed him to elevate his head using pillows until the swelling in his nose subsided. *Ibid.*

When he arrived back at MYI, the nurses there refused to provide Awad with ice and his pain medication for several days. *Id.* at 14–15 (¶ 32). Instead, officials placed Awad in segregation where he did not have any pillows to elevate his head or access to his pain medication. *Ibid.* Dr. Velletta placed a request to schedule an appointment with the ENT specialist on March 22.[1] *Id.* at 15–16 (¶ 34, 37). The appointment would first need to be reviewed by CMHC's Utilization Review Committee ("URC"), which ultimately denied the appointment on March 31. *Id.* at 16–17 (¶¶ 35, 37–38). As a result, Awad continues to suffer from pain in his nose and difficulty breathing because his nose was not aligned correctly. *Id.* at 17 (¶ 39).

On March 22, 2016, Awad was transferred to Carl Robinson. *Ibid.* (¶ 40). There, he was denied further treatment for his nose and continued to experience pain. *Ibid.* Awad was transferred from Carl Robinson to Cheshire on August 16, 2016. *Ibid.* (¶ 41). At Cheshire, Awad was treated by Dr. Ruiz and several nurses. *Ibid.*

On March 15, 2017, Awad finally met with an ENT specialist at UConn for his nose. *Id.* at 18 (¶ 43). The specialist informed Awad that realigning his nose would be a very long and painful procedure; he would have to break his nose again, cut it open, and obtain cartilage from another part of his body to properly set it in place. *Ibid.* (¶ 44). He told Awad that, had he come

---

[1] Awad's allegations regarding the dates of relevant events in his complaint are unclear. He initially alleges that he broke his nose on March 3, 2016. Doc. #1 at 10 (¶ 1). Later he alleges that Dr. Velletta scheduled his ENT specialist appointment for March 22, 2016, "7 days after the incident where [he] broke [his] nose on" March 15. *Id.* at 15–16 (¶¶ 34, 37).

earlier, the procedure would have been much easier. *Ibid.* (¶ 45). The specialist said that the resources for fixing Awad's nose were not available at UConn and that prison officials would have to refer plaintiff to an outside clinic. *Ibid.* (¶ 46). Despite making several trips to UConn, prison officials refused to permit Awad to go to an outside clinic for the operation. *Id.* at 19 (¶ 47).

From February to May of 2017, Dr. Ruiz stopped prescribing pain medication for Awad. *Ibid.* (¶ 48). This caused Awad to suffer from constant excruciating pain, and nurses refused to help Awad. *Ibid.* Awad is now incarcerated at Garner and continues to suffer pain in his nose because of defendants' failure to procure proper treatment for his condition. *Id.* at 19–20 (¶ 49).

Awad names Flores in connection with his assault, Achu and Karlson in connection with the use of excessive force against him, and Karlson, Wojcik, Rivera, Carnemolla, Velletta, and Ruiz for acting with deliberate indifference to his serious medical needs. He also mentions Department of Correction Commissioner Scott Semple in passing as having signed administrative policies. *Id.* at 17 (¶ 38), and appears to claim that that the URC, a division of CMHC, exercised deliberate indifference by denying Dr. Velletta's request for a follow-up ENT appointment. *Id.* at 16–17 (¶¶ 35, 38). He does not, however, name any of the other defendants in his factual allegations.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a

5

defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Claim against fellow inmate*

Awad names fellow inmate Flores as a defendant, Doc. #1 at 6, and claims that Flores assaulted him by knocking him to the ground, *id.* at 10 (¶¶ 1–2). "It is well established that a § 1983 claim is only cognizable against a state actor and not a fellow inmate," *Rigano v. Cty. of Sullivan*, 486 F. Supp. 2d 244, 256 n.15 (S.D.N.Y. 2007); *cf.* § 1983 (creating liability for defendants who deprive plaintiffs of rights "*under color of* . . . statute, ordinance, regulation, custom, or usage, of any State . . . .") (emphasis added). Awad has not alleged any facts to show that Flores is a state actor, rather than a private citizen, even if he is incarcerated. Consequently, he cannot state a claim that Flores has violated his rights under § 1983 and I will dismiss Awad's constitutional claim against Flores without prejudice to Awad's right to pursue any available relief against Flores for a state law claim of assault and battery in a Connecticut state court.

*Claims against state government entities*

Awad lists numerous state agencies and correctional institutions as defendants. These include CMHC, "UConn Hospital," the DOC, MYI, Carl Robinson, and Cheshire. I will dismiss the claims against all of these defendants, because none of them are persons subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Awad also claims to sue all defendants in both their individual and official capacities, Doc. # 1 at 20 (¶ 50), and to sue all defendants for money damages, *ibid.* (¶ 52). All the remaining defendants are either named state employees, or "John Doe" defendants who hold supervisory positions at state institutions. The Eleventh Amendment prevents Awad from maintaining a suit for money damages against state employees in their official capacities. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Therefore, I will dismiss all official capacity claims for monetary damages, and will address the remaining claims against the defendants for damages in their individual capacities, as well as for injunctive relief.

*Excessive force*

The Eighth Amendment prohibits the use of excessive force against a prison inmate. "Although not every malevolent touch by a prison guard gives rise to a federal cause of action, inmates have the right to be free from the unnecessary and wanton infliction of pain at the hands of prison officials." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (internal quotations and citations omitted). In order to state an Eighth Amendment claim for the use of excessive force, an inmate must allege a sufficiently serious use of force that has been inflicted for malicious or sadistic reasons rather than in a good faith effort to maintain or restore discipline. *Ibid.*; *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016).

Awad alleges that Achu pressed his body weight onto his back as Karlson attempted to handcuff him, even though he was not resisting their efforts. Doc. #1 at 11–12 (¶¶ 5–12). Awad also alleges that when he asked Achu to ease the pressure on his back, Achu nonetheless continued to press down and ridiculed Awad's claim to have trouble breathing. *Id.* at 11 (¶ 9). Awad has alleged sufficient facts for an excessive force claim to show that Achu was acting out of a malicious desire to cause harm rather than a good faith effort to maintain discipline.

Awad also alleges that Karlson was present and assisted in handcuffing Awad. Although the simple allegation that Karlson applied handcuffs to Awad's wrists does not state a claim for the use of excessive force, an officer is under a duty to prevent fellow officers from subjecting a citizen to excessive force, and an officer, "by failing to intervene, becomes a tacit collaborator in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (internal quotation marks and citation omitted). Awad has alleged sufficient facts to support a claim that Karlson failed to intervene in the use of excessive force by Achu. Accordingly, I will allow Awad's excessive force claims against Achu and Karlson to proceed.

### *Deliberate indifference to serious medical needs*

The Eighth Amendment prohibits prisons officials from being deliberately indifferent to the serious medical needs of prisoners in their custody. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an objective requirement—that the prisoner's medical need was sufficiently serious (*i.e.*, that the prisoner suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain). *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

Second, there is a subjective requirement: that the defendant have acted recklessly (*i.e.*, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action). *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or negligent medical malpractice; instead, a prisoner must show that the defendant acted with the equivalent of a criminally reckless state of mind with respect to the prisoner's medical needs. *See Hilton v. Wright*, 673 F.3d 120, 122–23 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

Awad alleges that Wojcik, Karlson, Rivera, and Carnemolla were deliberately indifferent to his serious medical needs when they delayed 10 to 15 minutes while he was on the floor with a bleeding and broken nose and then dismissed Awad's request for a wheelchair and forced him to walk to the medical unit instead. Although there is no doubt that Awad's medical need for treatment of a broken nose was serious, the Second Circuit has made clear that there is an important distinction between cases involving an outright denial of treatment and cases involving a delay in treatment. For cases involving a claimed delay in treatment, "the seriousness inquiry is narrower," and the analysis focuses "on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (internal quotations omitted). "Courts have found that a plaintiff's allegations fail to meet the objective prong [of the existence of a serious medical need] where the alleged delay in providing medical attention is neither the underlying cause of a plaintiff's condition nor contributed to a worsening in the condition." *Cuffee v. City of New York*, 2017 WL 1232737, at *9, *report and recommendation adopted*, 2017 WL 1134768 (S.D.N.Y. 2017); *see also Torres v. UConn Health*, 2018 WL 2926277, at *5 (D. Conn. 2018) (delay of several hours in treating

9

complaints of chest pain and shortness of breath not sufficient to sustain deliberate indifference claim).

Awad does not allege facts to suggest that his medical condition was actually compromised by the 10-15 minute delay in treatment or the fact that he had to walk to the medical unit rather than taking a wheelchair. Nor does he allege facts to suggest that any of the defendants whom he claims were responsible for this delay failed to act because of reckless disregard for Awad's medical needs. Accordingly, I conclude that he has not alleged facts that give rise to plausible grounds for relief on his claim against Wojcik, Karlson, Rivera, and Carnemolla for deliberate indifference to serious medical needs.[2]

Awad also claims that Dr. Velletta acted with deliberate indifference to his medical needs. He alleges that he was advised by UConn Medical on the date of his broken nose injury that he would need to have it reset within 6 to 10 days, but Dr. Velleta delayed 7 days before even scheduling an ENT appointment. Ultimately, however, the scheduled specialist appointment did not happen because the URC declined on March 31, 2016, to authorize it. Doc. #1 at 15–16 (¶¶ 33–35). Because Awad acknowledges that the scheduled appointment never occurred due to reasons beyond Dr. Velletta's control, Awad has not alleged any facts to suggest that Dr. Velletta's delay in scheduling the specialist appointment caused any harm to Awad, and therefore Awad has not alleged facts to allow for a deliberate indifference claim against Dr. Velletta.[3]

---

[2] By contrast, a far longer delay might well have sufficed to support an Eighth Amendment claim, depending in part on the pain or disability experienced in the interim. *See Rodriguez v. Manenti*, 606 F. App'x 25, 26 (2d Cir. 2015) (more than one year delay for arranging knee surgery to address chronic pain and intermittent disabling knee locking from gunshot injury to knee); *Salahuddin*, 467 F.3d at 281 (presuming that five-month delay of liver biopsy was "objectively serious" where plaintiff put forth evidence that he suffered pain during that period); *Hathaway v. Coughlin*, 841 F.2d 48, 50–51 (2d Cir. 1988) (more than two-year delay for surgery to correct broken pins in hip).
[3] Because Awad alleges that the URC is part of state agency CMHC, any claim against CMHC based on the URC's

Awad claims that Dr. Ruiz "showed his deliberate indifference when he stop[p]ed my pain medication from about Feb[r]uary 2017 to May 2017 for about 4 months causing me excruciating pain and every day I would ask for my medication but the nurses would refuse to give me any help." *Id.* at 19 (¶ 48). He alleges no further facts concerning his interactions with Dr. Ruiz or what he told Dr. Ruiz about his condition. The sparse facts that he has alleged about Dr. Ruiz are equally consistent with a claim of a reasonable disagreement about the course of treatment or with a claim of negligent medical malpractice as they are with a claim of deliberate indifference. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678; *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015) (affirming dismissal of intentional discrimination claim where factual allegations showed it was "equally possible that plaintiffs have not been promoted for valid, non-discriminatory reasons").

"Medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness—an act or a failure to act by a prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Hill*, 657 F.3d at 123 (affirming dismissal of complaint that alleged only that prisoner plaintiff "was denied 'medical care—that is pain medication [and] nerve conduction study—leaving him needlessly to suffer,'" because "[i]ssues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking"); *compare Walker v. Cty. of Nassau*, 2016 WL 5338546, at *2 (E.D.N.Y. 2016) (allowing claim of refusal to prescribe pain medication to proceed where alleged facts were sufficient to suggest that refusal was not merely disagreement about proper course of treatment). Because Awad has not alleged sufficient facts—as distinct

---

actions cannot proceed, as I have explained above.

from legal conclusions—to support an inference that Dr. Ruiz failed to prescribe pain medication due to his deliberate indifference to Awad's medical needs (rather than due to a difference of medical opinion or due to simple negligence), I will dismiss Awad's claim of deliberate indifference against Dr. Ruiz.

### *Supervisory Liability of Other DOC Officials*

The remaining listed defendants are the Director of CMHC, the Director of "UConn Hospital," Commissioner Semple, Warden Alves, Deputy Warden Borges, Deputy Warden Hunt, Lieutenant DeJackome, Officer Larson, Dr. Freston, the Director of the Medical Unit at MYI, a doctor at Carl Robinson, the Medical Director at Carl Robinson, and the Medical Director at Cheshire. Awad has not alleged any facts against these defendants in the body of his complaint. It appears he is only suing them because they have supervisory roles in the facilities or institutions where they work.

A defendant must be personally involved in an alleged constitutional violation in order to be liable under § 1983. *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). And while there are numerous ways in which supervisory involvement can take place, *ibid.*, none of them apply in the absence of any factual allegations against the remaining named defendants. Because Awad has not named how any of the remaining named defendants were personally involved in violating his rights, I will dismiss all claims against them in their individual capacities.

### *Request for Injunctive Relief*

Although Awad's complaint only formally requests money damages as a remedy, *see* Doc. #1 at 20 (¶ 52), he also has sued all defendants in their official capacities, *ibid.* (¶ 50). He states that he would like the defendants "to fix [his] nose/injuries," *ibid.*, and he has separately

12

moved for a preliminary injunction, *see* Doc. #4. I construe this as a prayer for injunctive relief in Awad's claim.

A request for injunctive relief from a state official is not cognizable consistent with the Eleventh Amendment absent an allegation of an ongoing constitutional violation. *See, e.g.*, *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Many of the defendants named in the complaint work at MYI, Carl Robinson, or Cheshire. *See* Doc. #1 at 4–6 (¶¶ 14–26). Awad is now incarcerated at Garner. Doc. #1 at 2, 19 (¶ 49). Consequently, all of Awad's claims for injunctive relief against the officials MYI, Carl Robinson, and Cheshire are moot, because he is no longer confined at those institutions. *See Salahuddin*, 467 F.3d at 272 ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."). Nonetheless, Awad also names three defendants whose positions are not tied to a facility in which he is no longer incarcerated: DOC Commissioner Scott Semple, the Director of CMHC, and the Director of "UConn Hospital," which I construe to mean the Director of the University of Connecticut Health Center. To the extent that Awad alleges an ongoing constitutional violation from the lack of medical attention and necessary corrective surgery to alleviate his ongoing pain, numbness, migraine headaches, sleep disruption, inability to breath, and draining of mucous (Doc. #1 at 19–20 (¶ 49)), his claim may proceed against these defendants for injunctive relief. *See* Fed. R. Civ. P. 17(d) ("a public officer who . . . is sued in an official capacity may be designated by official title rather than by name"). Because Awad has requested a preliminary injunction in addition to his complaint, the defendants sued in their

13

official capacity shall also respond to the motion for a preliminary injunction as well as the complaint and address why the requested relief should not be granted.

*Motion for Appointment of Counsel*

Awad also has moved for the appointment of *pro bono* counsel to represent him in this case pursuant to 28 U.S.C. § 1915(e). Doc. #3. The Second Circuit has repeatedly cautioned the district courts against the routine appointment of counsel. *See, e.g.*, *Ferelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003); *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997). The Second Circuit has also made clear that before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *Saviano v. Local 32B-32J*, 75 F. App'x 58, 59 (2d Cir. 2003) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173 (2d Cir. 1989) (*per curiam*)). Awad has indicated that he has contacted ten law firms without success. *See* Doc. #3 at 6. His motion does not indicate that he has yet contacted the Inmate Legal Assistance Program, but a motion he filed in another action pending before me indicates that he has since done so. *See* Doc. #29 at 1–2 (¶¶ 4–5), *Awad v. Moskites*, 18cv1167 (D. Conn. Nov. 27, 2018). Although the Program attorneys will not appear on his behalf, they do provide legal assistance, and Awad has not shown that this assistance is insufficient at this stage of the case. I will therefore deny the motion for appointment of counsel without prejudice at this time, and Awad is advised to discuss this case and any other cases he has pending before this Court with Program attorneys.

**CONCLUSION**

In accordance with the foregoing analysis, the Court enters the following orders:

14

(1) Awad's Eighth Amendment money damages claim for excessive force may proceed against defendants Achu and Karlson in their individual capacity for damages. Awad's Eighth Amendment for deliberate indifference to serious medical needs may proceed against Semple, the Director of CMHC, and the Director of the UConn Health Center in their official capacities solely for injunctive relief. Pursuant to Federal Rule of Civil Procedure 17(d), the Clerk is directed to add the names of the officers holding the positions of Director of CMHC and Director of the UConn Health Center. All other claims and all other defendants to this action are DISMISSED without prejudice if Awad is able to allege additional names or facts in an amended complaint that must be filed by **February 4, 2019**, to cure the factual deficiencies identified in this ruling.

(2) The Clerk shall verify the current work addresses for Achu, Karlson, Semple, the Director of CMHC, and the Director of the UConn Health Center with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (Doc. #1) to those defendants at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) All defendants shall file their response to the complaint (Doc. #1), either an answer or motion to dismiss, and, if applicable, their response to the motion for a preliminary injunction (Doc. #4) within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit

15

or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26–37, shall be completed by **July 3, 2019**. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed by **August 2, 2019**.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If Awad changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Awad has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Awad should also notify defendants or defense counsel of his new address.

(8) Awad's motion for appointment of counsel (Doc. #3) is DENIED without prejudice subject to refiling at a later stage of litigation.

(9) Awad's motion to amend his *in forma pauperis* application (Doc. #9) is DENIED as moot. The Court has granted Awad's motion to proceed *in forma pauperis* (Doc. #12).

It is so ordered.

Dated at New Haven this 4th day of January, 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge